UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| FARMER BROS. CO.<br><br>　　　Plaintiff,<br><br>v.<br><br>BEAZLEY INSURANCE COMPANY, INC.,<br><br>　　　Defendant. | Civil Action No. 4:25-cv-00100-SDJ |

**DEFENDANT BEAZLEY INSURANCE COMPANY, INC.'S MOTION TO DISMISS**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Beazley Insurance Company, Inc. ("Beazley"), by and through its counsel, moves to dismiss the First Amended Complaint filed by Plaintiff Farmer Bros. Co. ("Farmer Bros."). The Beazley liability policy at issue covers employers who commit certain defined "Wrongful Acts," such as "Discrimination" and "Inappropriate Employment Conduct," which includes (as relevant here) the wrongful deprivation of a career opportunity. The underlying action alleges only that Farmer Bros. violated a strict liability statute that requires job postings in Washington to contain required salary information. That alleged misconduct is not "Discrimination"; nor does it constitute the deprivation of a career opportunity. Accordingly, Beazley respectfully asks the Court to grant the Motion to Dismiss with prejudice.

**I.　　STATEMENT OF THE ISSUE**

Whether Farmer Bros. is entitled to coverage for an underlying lawsuit that seeks statutory damages for violation of a strict liability wage transparency statute when the relevant employment practices liability insurance policy provides coverage only for certain defined **Wrongful Acts**.[1]

---

[1] Terms in bold are defined in the Policy.

## II.   PRELIMINARY STATEMENT

This is an insurance coverage dispute concerning an employment practices liability policy. The complaint in the underlying action does not allege that Farmer Bros. committed a **Wrongful Act** as defined by the policy. Accordingly, Beazley respectfully asks the Court to dismiss this action with prejudice.

Beazley issued an employment practices liability policy ("Policy") to Farmer Bros. for the policy period of November 15, 2023 to November 15, 2024. The Policy provides coverage for **Wrongful Acts**, which (as relevant here) includes claims for **Discrimination** and **Inappropriate Employment Conduct**.

On January 1, 2023, Washington's Wage Transparency Law ("WTL") went into effect. The WTL requires all employers with more than 15 employees in Washington to disclose the wage scale or salary range in each job posting. The WTL provides job applicants with a private right of action against employers that fail to comply with the law. Although the WTL is part of a statutory scheme which seeks to address income disparities, among other issues, the WTL is a strict liability statute. No actual discrimination is required for an employer to be held liable for noncompliance.

Shortly after the WTL went into effect, dozens of plaintiffs filed putative class action lawsuits against companies that allegedly published non-compliant job postings in Washington—including Farmer Bros. In August 2024, Shannon Spencer ("Spencer") filed a class action against Farmer Bros. in the Superior Court for the State of Washington, King County, captioned *Shannon Spencer v. Farmer Bros. Co.*, Case No. 24-2-19732-0 SEA (the "Spencer Action"). Spencer generally alleges that she applied for a job in King County, Washington, with Farmer Bros. and that the job posting did not disclose the wage scale or salary range being offered. Spencer seeks

statutory damages for that alleged WTL violation on behalf of herself and a class consisting of all individuals who applied to a non-compliant Farmer Bros. job posting in Washington.

In this lawsuit, Farmer Bros. advances two theories for why the Spencer Action is covered under the Policy. Both theories are wrong as a matter of law.

First, Farmer Bros. argues that the Spencer Action alleges a covered **Discrimination** claim under the Policy. It does not. The WTL does not require, and the Spencer Action does not allege, that Farmer Bros. discriminated against anyone. In accord with the general understanding of "discrimination" in most jurisdictions, the Policy expressly requires an adverse or differential employment act taken "*because of*" a victim's protected characteristics in order to trigger **Discrimination** coverage. The Spencer Action contains no allegations that Farmer Bros. took any action, let alone an adverse employment act, because Spencer or other class members belonged to a protected class. Nor would it want to. The Spencer Action is purposefully drafted to maximize the size of its class to encompass *everyone* who applied to non-compliant job listings.

Second, Farmer Bros. claims that the Spencer Action alleges covered **Inappropriate Employment Conduct**, because Farmer Bros. deprived Spencer and the class members of a career opportunity with Farmer Bros. This argument also fails. The Spencer Action never alleges or suggests that Spencer or any class member was deprived of a career opportunity. The crux of the Spencer Action complaint is that Farmer Bros. failed to comply with the WTL, and that Spencer and the class are entitled to statutory damages for this failure. Nowhere in the complaint does Spencer allege that Farmer Bros. wrongfully denied Spencer or any class member of a position with Farmer Bros. or any other career opportunity. As a result, the Spencer Action does not allege a claim for **Inappropriate Employment Conduct**.

The Spencer Action alleges a banal statutory violation that entitles job applicants who receive deficient salary information to $5,000 in statutory damages—not a covered **Discrimination** or **Inappropriate Employment Conduct** claim. Accordingly, Beazley respectfully requests that the Court dismiss Farmer Bros.' complaint with prejudice.

## III.   BACKGROUND

### A.   The Policy

Beazley issued Execuguard – Management Liability Insurance Policy No. V1A0A5230901 to Farmer Bros., with a policy period from November 15, 2023 to November 15, 2024 (the "Policy"). (Ex. A at 3.)[2] Subject to all terms, conditions, and exclusions, the Policy provides coverage for Employment Practices Liability ("EPL"):

> Underwriters shall pay on behalf of the **Insureds** all **Loss** resulting from any **Claim** first made against any **Insured** during the **Policy Period** or **Optional Extension Period**, if applicable, and reported in writing to Underwriters in accordance with Clause VIII.A. of the General Terms and Conditions for a **Wrongful Act**.

(*Id.* at 22.) The Policy defines **Claim** in relevant part, as "a written demand or request for monetary damages or non-monetary or injunctive relief against any of the **Insureds**." (*Id.* at 25.) The Policy defines **Wrongful Act** as:

1. **Inappropriate Employment Conduct**;
2. **Discrimination**;
3. **Harassment**; and/or
4. **Retaliation**,

by any of the **Insureds** against an **Insured Person** or an applicant for employment of the **Insured Organization**.

---

[2] Policy citations are to the page number from a PDF copy of the Policy, which is attached to this brief as Exhibit A. Thus, 3 refers to page 3 of the 59-page Exhibit A.

>   …
>
>   **Wrongful Act** shall include any such acts of **Inappropriate Employment Conduct**, **Discrimination**, **Harassment**, and/or **Retaliation** or any **Third Party Wrongful Act** (if purchased) by any **Employee** by means of the internet, including, but not limited to, social networking activities, regardless of whether such internet activity is during or after work hours or on or off the work premises.
>
>   **Wrongful Act** shall not include any actual or alleged violations of any **Immigration Practices Law** or any **Wage and Hour Law**.

(*Id.* at 32.) Pursuant to the terms of the Policy, **Inappropriate Employment Conduct** is any of the following:

>   1. actual or constructive termination of an employment relationship in a manner which is alleged to have been against the law or wrongful;
>
>   2. actual or alleged wrongful demotion, evaluation, deprivation of a career opportunity, or discipline;
>
>   3. actual or alleged breach of an express written employment agreement;
>
>   4. actual or alleged violation of the Family and Medical Leave Act;
>
>   5. actual or alleged misrepresentation, false imprisonment, detention or malicious prosecution in connection with an employment decision;
>
>   6. actual or alleged libel, slander, defamation of character or any invasion of right of privacy in connection with an employment decision;
>
>   7. actual or alleged negligent hiring, retention or supervision, or failure to employ or promote, train, create or enforce adequate workplace or employment policies and procedures, or grant tenure or seniority, as long as alleged in connection with an act described in 1. through to 6. above; or
>
>   8. actual or alleged **Privacy Violation**, subject to the applicable limit as shown in . . . the Declarations. Such limit amount shall be part of, and not in addition to, the aggregate Limit of Liability applicable to the Employment Practices Liability Coverage Section.

(*Id.* at 27.) The Policy defines **Discrimination** as:

> Any actual or alleged termination of the employment relationship, demotion, failure or refusal to hire or promote, denial of an employment benefit or the taking of any adverse or differential employment action *because of* race, color, religion, age, sex, disability, pregnancy, sexual orientation or identity, national origin, citizenship or immigration status, genetic information, military status or any other basis which is or is alleged to be prohibited by federal, state or local law.

(*Id.* at 25 (emphasis added).) The Policy defines **Loss** in relevant part, as:

> 1. Amounts which an **Insured** is legally obligated to pay as a result of a **Claim** including compensatory damages, judgments (including prejudgment and post judgment interest awarded against an **Insured** on that part of any judgment paid by Underwriters), back pay, front pay, settlements, verdicts, awards, statutory attorney fees pursuant to a covered judgment against an **Insured**, **Defense Costs** and punitive, exemplary and multiple damages where insurable by law in the applicable jurisdiction most favoring coverage for punitive, exemplary or multiple damages.

(*Id.* at 28.) However, **Loss** does not include:

> a) the cost of providing non-monetary or injunctive relief (this provision does not apply to **Defense Costs** where non-monetary relief or injunctive is sought);
>
> b) civil or criminal fines (other than civil fines imposed under the Health Insurance Portability and Accountability Act), penalties, sanctions, liquidated damages (other than those awarded under the Age Discrimination in Employment Act or the Equal Pay Act); payroll or other taxes, statutory damages that are predicted upon a finding of willfulness or other amounts or matters that may be deemed uninsurable according to the law under which this Coverage Section is construed;
>
> c) amounts recoverable under **Wage and Hour Laws** or **Immigration Practices Laws**.

(*Id.* at 29.)

B. **The Washington Wage Transparency Law**

In 2022, the Washington Legislature amended the state's equal pay law. The new amendment requires employers to proactively disclose compensation information in each job posting. The new amendment (the "WTL") went into effect on January 1, 2023, and provides that:

(1) The employer must disclose in each posting for each job opening the wage scale or salary range, and a general description of all of the benefits and other compensation to be offered to the hired applicant. For the purposes of this section, "posting" means any solicitation intended to recruit job applicants for a specific available position, including recruitment done directly by an employer or indirectly through a third party, and includes any postings done electronically, or with a printed hard copy, that includes qualifications for desired applicants.

(2) Upon request of an employee offered an internal transfer to a new position or promotion, the employer must provide the wage scale or salary range for the employee's new position.

(3) This section only applies to employers with 15 or more employees.

(4) A job applicant or an employee is entitled to the remedies in RCW 49.58.060 and 49.58.070 for violations of this section. Recovery of any wages and interest must be calculated from the first date wages were owed to the employee.

RCW 49.58.110. A job applicant or employee may bring a civil action against an employer for violation of the WTL. *See* RCW 49.58.070.

C. **The Spencer Action**

On or about August 30, 2024, Shannon Spencer filed a putative class action against Farmer Bros. in the Superior Court for the State of Washington, King County, captioned *Shannon Spencer v. Farmer Bros. Co.*, Case No. 24-2-19732-0 SEA (the "Spencer Action"). (Ex. B.)

The Spencer Action alleges that effective January 1, 2023, the WTL requires all Washington employers with 15 or more employees to disclose, in each posting for each job opening, the wage scale or salary range and a general description of the benefits and other

compensation being offered to the hired applicant. (Ex. B at ¶ 18.) Despite the WTL becoming effective January 1, 2023, Farmer Bros. allegedly continues to withhold pay information in its job postings for Washington-based positions. (*Id.* at ¶ 22.)

On or about November 23, 2023, Spencer applied for a job opening in King County, Washington with Farmer Bros. (*Id.* at ¶ 25.) The posting for the job opening Spencer applied to did not disclose wage or salary information. (*Id.* at ¶ 27.) In working through the application, Spencer expected that at some point she would learn the rate of pay for the open position. (*Id.* at ¶ 28.) Farmer Bros., however, withheld the rate of pay for the open position in the job posting and throughout the application process, forcing Spencer to complete the entire application without learning the rate of pay. (*Id.* at ¶ 29.) Due to Farmer Bros.' alleged refusal to publish the wage scale or salary range within the job posting, Spencer was unable to evaluate the pay for the position and compare that pay to other available positions in the marketplace, which negatively impacts Spencer's current and lifetime wages. (*Id.* at ¶ 32.) Farmer Bros.' failure to disclose wage information also adversely affected Spencer's ability to negotiate pay, and she lost valuable time applying for a position for which wage information was not disclosed. (*Id.* at ¶¶ 33–34.)

The Spencer Action contains a single cause of action for violation of the WTL. (*Id.* at ¶¶ 48–54.) Spencer seeks statutory damages of $5,000 for herself and each class member pursuant to RCW 49.58.070 and RCW 49.58.110. (*Id.* at ¶ 56.) The class consists of:

> All individuals who, from January 1, 2023, through the date notice is provided to the Class, applied for a job opening in the State of Washington with Farmer Bros. Co., where the job posting did not disclose a wage scale or salary range.

(*Id.* at ¶ 40.)

### D. Farmer Bros.' Claim for Coverage

Farmer Bros. submitted the Spencer Action to Beazley for coverage. Beazley disclaimed coverage because (among other reasons) the Spencer Action did not allege a **Claim** for a **Wrongful Act** as defined in the Policy. Specifically, the failure to disclose the wage scale or salary range in postings for job openings in Washington in violation of the WTL does not fall within the Policy's definitions of **Inappropriate Employment Conduct** and **Discrimination**. Nevertheless, Beazley stated that it was prepared to defend Farmer Bros. under a complete reservation of rights.

After receiving Beazley's reservation of rights letter, Farmer Bros. filed this action, which alleges claims for breach of contract, declaratory judgment, and attorneys' fees. (Dkt. 1 at 8–9.) On April 7, 2025, Farmer Bros. filed the First Amended Complaint, alleging claims for breach of contract and attorneys' fees. (Dkt. 12.) Farmer Bros. alleges that the Policy obligates Beazley to cover defense and indemnity amounts for the Spencer Action in excess of the Policy's $200,000 retention. Farmer Bros. claims that Beazley breached the Policy by denying coverage for the Spencer Action.

## IV. LEGAL STANDARDS

### A. Dismissal Pursuant to Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' Although 'a court must accept as true all of the allegations contained in a complaint,' that tenent 'is inapplicable to legal conclusions' or '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Hammer v. Equifax Info. Servs., L.L.C.*, 974 F.3d 564, 567 (5th Cir. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)). In assessing the sufficiency of a complaint in the context of a 12(b)(6) motion, "the Court should identify and disregard conclusory allegations, for they are 'not entitled to the assumption of truth.'" *Miller v. Underwood*, Docket No. 4:18-CV-313, 2018 WL 6504175, at *2 (E.D. Tex. Dec. 11, 2018) (citing *Iqbal*, 556 U.S. at 664); *see also Vizza Wash, LP v. Nationwide Mut. Ins. Co.*, 496 F. Supp. 3d 1029, 1038 (W.D. Tex. 2020) (finding that a court "need not 'accept as true a legal conclusion couched as a factual allegation'").

"Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. . . . A court may consider documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the plaintiff's claims. . . . Courts treat such documents as incorporated into the plaintiff's complaint." *Naranjo v. Nick's Mgmt., Inc.*, 652 F. Supp. 3d 737, 747 (N.D. Tex. 2023); *see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (holding that a "court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."). A document is central to the plaintiff's claim if it is "necessary to establish an element of one of the plaintiff's claims." *Naranjo*, 652 F. Supp. 3d at 747.

Beazley has attached the Policy and the Spencer Action complaint as exhibits to its Motion to Dismiss. The Court can and should consider these attachments in evaluating the motion. Farmer Bros. references and quotes both documents in its First Amended Complaint.

### B. Texas Law Applies to this Dispute

The Policy contains no choice of law provision. As a federal court sitting in diversity, this Court must apply Texas law. *Citigroup Inc. v. Fed. Ins. Co.*, 649 F.3d 367, 371 (5th Cir. 2011);

*BITCO Gen. Ins. Corp. v. Acadia Ins. Co.*, 427 F. Supp. 3d 838, 847 (E.D. Tex. 2019) ("As with other contracts, a federal court, sitting in diversity in Texas, applies Texas law in the interpretation of insurance policies."). Moreover, an insurance policy payable to a "citizen or inhabitant" of Texas and issued by an insurance company doing business in Texas is governed by Texas law regardless of where the contract was executed or the premiums paid. *See* Tex. Ins. Code. Art. 21.42. Farmer Bros. seeks coverage under the Policy and alleges that it has a principal place of business in Fort Worth, Texas. (Dkt. 12 at ¶ 1.) Accordingly, Texas law applies to this dispute.

"Under Texas law, the general rules of contract interpretation govern a court's review of an insurance policy. . . . Therefore, the primary goal is to give effect to the written expression of the parties' intent." *Citigroup Inc.*, 649 F.3d at 371. The "paramount rule is that courts enforce unambiguous policies as written such that [the] court must honor plain language, reviewing policies as drafted, not revising them as desired." *Diesel Barbershop, LLC v. State Farm Lloyds*, 479 F. Supp. 3d 353, 358 (W.D. Tex. 2020). If an insurance policy only has one reasonable interpretation, then it is unambiguous and must be enforced as written. *Citigroup Inc.*, 649 F.3d at 371. "Interpretation of an insurance contract generally involves a question of law. . . . In the context of a lawsuit seeking coverage under an insurance policy, dismissal is proper when the plain language of the policy precludes coverage." *Martin Res. Mgmt. Corp. v. Fed. Ins. Co.*, Docket No. 20-40571, 2021 WL 4269565, at *2 (5th Cir. Sept. 20, 2021).

"In Texas, when determining an insurer's duty to defend an insured, the court follows the 'eight corners' or 'complaint allegation' rule. . . . Under this rule, an insurer's duty to defend is determined by examining the four corners of the most recent complaint in the underlying action as well as the four corners of the insurance policy." *BITCO*, 427 F. Supp. 3d at 848. "In reviewing the underlying pleadings, the court must focus on the factual allegations that show the origin of

the damages rather than on the legal theories advanced." *Id.* "If a plaintiff's complaint does not allege facts within the scope of policy coverage, an insurer has no legal obligation to defend the insured against the plaintiff's claims." *Id.* at 849.

The duty to indemnify is distinct and separate from the duty to defend. *Penn-America Ins. Co. v. Dominguez*, Docket No. 6:21-cv-211-JDK, 2021 WL 5578684, at *3 (E.D. Tex. Nov. 30, 2021). "[T]he duty to indemnify means the insurer will pay all covered claims and judgments against an insured." *Id.* "While the duty to indemnify is generally evaluated only after liability is established in the underlying lawsuit, if the same reasons negating the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify, the court may decide at the outset of a case that an insurer has no duty to indemnify." *Colony Ins. Co. v. Custom Ag Commodities, LLC*, 272 F. Supp. 3d 948, 962 (E.D. Tex. 2017).

### V.   ARGUMENT

Farmer Bros. cannot meet its burden to establish that the Spencer Action alleges a **Wrongful Act** within the meaning of the Policy. *See Martin Res. Mgmt. Corp.*, 2021 WL 4269565, at *2 (holding that, under Texas law, the insured has the "burden of establishing coverage under the terms of the policy"). The alleged wrongdoing in the Spencer Action does not qualify as **Discrimination** or **Inappropriate Employment Conduct** under the plain language of the Policy. To the contrary, the Spencer Action seeks to certify a broad class of individuals who responded to a job posting that failed to include salary details for the open position. The Spencer Action seeks strict liability and statutory damages for that alleged failure. For these reasons, Beazley has no duty to defend or indemnify Farmer Bros. against the Spencer Action, and this lawsuit should be dismissed with prejudice. *See id.* at *5. (affirming dismissal of breach of contract claim when plaintiff failed to satisfy burden of establishing right to coverage under policy); *see also DZ Jewelry, LLC v. Certain Underwriters at Lloyd's London*, 525 F. Supp. 3d 793, 800–802 (S.D.

Tex. 2021) (dismissing breach of contract claim when plaintiff did not plausibly allege that COVID-19 caused direct physical loss of or damage to its store).

### A. The Spencer Action Does Not Allege a Claim for Discrimination

Subject to all terms and conditions, the Policy covers claims for **Discrimination**. The Policy definition of **Discrimination** contains two separate requirements. *First*, Farmer Bros. must allegedly: (1) terminate an employment relationship; (2) demote a claimant; (3) fail or refuse to hire or promote a claimant; (4) deny a claimant an employment benefit; *or* (5) take any other adverse or differential employment action against a claimant. (Ex. A at 25.) And *second*, Farmer Bros. must allegedly take that action "***because of*** race, color, religion, age, sex, disability, pregnancy, sexual orientation or identity, national origin, citizenship or immigration status, genetic information, military status or any other basis which is or is alleged to be prohibited by federal state or local law." (*Id.* (emphasis added).) The Spencer Action falls short of both requirements.

***No "Adverse or Differential Employment Action."*** The Spencer Action contains no allegation that Farmer Bros. terminated Spencer, demoted Spencer, failed or refused to hire Spencer, denied any employment benefit to Spencer, or took any other adverse or differential "employment action" against Spencer or any other class member. Spencer alleges only that Farmer Bros. failed to post legally required salary information about a job opening to which she applied, and therefore Spencer was unable to evaluate or negotiate the pay for the position and lost valuable time. If true, this may be a statutory violation entitling Spencer (and other class members) to statutory damages, but it is not an "adverse or differential employment action" taken against Spencer (or any other class member).

In its First Amended Complaint, Farmer Bros. tries to cure this problem by claiming the Spencer Action alleges that Farmer Bros. engaged in discriminatory hiring practices that resulted in Farmer Bros. "failing to hire the claimant-applicants, denying the claimant-applicants

employment benefits, and/or taking adverse or differential employment actions because of reasons prohibited by law." (Dkt. 12 at ¶ 23.) These conclusory mischaracterizations of the Spencer Action – a copy of which is properly before the Court on this motion – are "not entitled to the assumption of truth" and need not be credited by the Court. *See Miller*, 2018 WL 6504175, at *2. There are no allegations in the Spencer Action complaint that state, let alone suggest, that Farmer Bros. refused to hire Spencer or any class member, denied them an employment benefit, or took an adverse or differential employment action.

***No Act "Because Of" a Protected Characteristic***. Even if the allegations in the Spencer Acton somehow could be construed to allege an adverse employment action, there are no allegations that Farmer Bros. took those actions ***because*** Spencer or other class members belonged to a protected class. To the contrary, the Spencer Action defines the class as "***all*** individuals who, from January 1, 2023, through the date notice is provided to the Class, applied for a job opening in . . . Washington with Farmer Bros. Co., where the job posting did not disclose a wage scale or salary range." (Ex. B at ¶ 40 (emphasis added).) The Spencer Action seeks statutory damages for ***all*** applicants, regardless of their status, protected or not. Moreover, an employer's liability under the WTL does not depend on the existence of discrimination: a job applicant may bring a lawsuit for an employer's mere failure to comply with the statute, as Spencer has done here. RCW 49.58.110. Accordingly, the allegations in the Spencer Action amount to nothing more than Farmer Bros.' alleged failure to comply with a strict liability statute. A violation of the WTL, absent any allegations suggesting that Farmer Bros. acted or failed to act with respect to Spencer (or any class members) "***because of***" their status as a member of a protected class, does not trigger coverage under the Policy.

To avoid this inevitable conclusion, Farmer Bros. points to a myriad of allegations in the Spencer Action complaint that are either legal conclusions or that purport to assert the Washington legislature's purpose for enacting the WTL. (Dkt. 12 at ¶ 32; Ex. B at ¶¶ 1, 4, 6, 8, 23–24, 35–36.) None of these allegations bring the Spencer Action within the purview of the Policy's coverage. In the Spencer Action, Spencer makes conclusory allegations that Farmer Bros. "continues to employ discriminatory hiring practices as a result of its ongoing refusal to comply with RCW 49.58.110," that Spencer "has experienced economic and non-economic harm as a direct result of [Farmer Bros.'] discriminatory hiring practices," and that "Plaintiff and the Class are victims of [Farmer Bros.'] discriminatory hiring practices, which are specifically prohibited by RCW 49.58.110." (Ex. B at ¶¶ 23, 35–36.) These allegations are legal conclusions that reflect Spencer's characterization of the strict liability statutory violation. The Court is not required to accept these legal conclusions as true. *Hammer*, 974 F.3d at 567. Instead, the Court should look to the plain language of the Policy and the factual allegations that show the origin of Spencer's damages—not Spencer's characterizations of the acts as "discriminatory." *BITCO*, 427 F. Supp. 3d at 848. All of Spencer's (and the putative class's) alleged statutory damages stem from Farmer Bros.' alleged failure to include wage information in its public job postings. Those factual allegations do not constitute **Discrimination** under the Policy.

Nor does the WTL's purported purpose of promoting equal pay bring Spencer's claims within the Policy's coverage. The Policy does not cover violations of a statute based on the remedial purposes of a *statute*; the Policy covers violations based on the alleged discriminatory *intent of the Insured*. For conduct to qualify as **Discrimination**, the Policy requires Farmer Bros. to deny an employment benefit or take some other adverse employment action "***because of***" a claimant's status as a member of a protected class. The Spencer Action complaint alleges no such

discriminatory conduct. A strict liability violation of the WTL for the general failure to post salary information, without allegations of discrimination "because of" a protected characteristic, cannot trigger coverage under the Policy.

### B.    Farmer Bros. Did Not Deprive the Underlying Plaintiff of a Career Opportunity

The Policy's **Wrongful Acts** coverage also includes **Inappropriate Employment Conduct**, which is defined to include "actual or alleged wrongful demotion, evaluation, deprivation of a career opportunity, or discipline." (Ex. A at 27.) Farmer Bros. contends that the alleged WTL violations in the Spencer Action fall within that coverage grant because they constitute alleged "deprivation of a career opportunity." (Dkt. 12 at ¶¶ 17, 23-24.) Farmer Bros. is mistaken.

Not a single allegation in the Spencer Action suggests that Spencer (or any class member) was deprived of a career opportunity. Spencer alleges that she and the class members applied to job postings with Farmer Bros. that did not include wage scale or salary range information. (Ex. B at ¶ 21.) Notably, Spencer does not allege that Farmer Bros. wrongfully denied Spencer (or any other class member) a position with Farmer Bros. Nor does Spencer allege that Farmer Bros. engaged in any other wrongful conduct aside from its alleged failure to comply with the WTL. And for good reason. As explained above, the WTL is a strict liability statute where noncompliance exposes an employer to liability without regard to whether a job applicant was hired or whether any hiring decision or negotiation was wrongful or discriminatory. Accordingly, for sound strategic reasons related to plaintiff's desire to certify the largest possible class and maximize its statutory damages, the Spencer Action contains no allegations that Farmer Bros. deprived Spencer of a career opportunity.

Farmer Bros. may take the position that "deprivation of a career opportunity" should be read so broadly as to encompass an unlawful failure to post salary information on a public job posting. But the Policy offers no basis for such a broad reading. To the contrary, the Policy precludes it. The **Inappropriate Employment Conduct** definition contains a long list of specific, covered activities; and none references deficient job postings. Moreover, the phrase "deprivation of a career opportunity" must be interpreted and understood in the context of its surrounding phrases. *See New York Marine and General Ins. Co. v. Hilliard Munoz Gonzales LLP*, 2021 WL 12097843, at *10 (S.D. Tex. Mar. 30, 2021) (applying contractual interpretation canon "noscitur a sociis," which "directs that similar terms in a contract should be interpreted in a similar manner and instructs that the meaning of a word or phrase can be revealed by its association and commonality with other nearby words or phrases," to reject broad interpretation of "Professional Services" in insurance contract); *United States Fidelity and Guar. Co. v. Goudeau*, 272 S.W.3d 603, 606 (Tex. 2008) (holding that "[u]nder the traditional canon of construction *noscitur a sociis* ('a word is known by the company it keeps,')" an insurance policy cannot be interpreted to "ascrib[e] to one word a meaning so broad that it is inconsistent with its accompanying words.'") Here, those "accompanying words" are "wrongful demotion, evaluation . . . or discipline." (Ex. A at 27.) These are all acts of an employer vis-à-vis the performance of an employee. Thus, "deprivation of a career opportunity" plainly refers to a particular failure to consider or promote a company employee for an open position—not a failure to post salary information to the public at large.

    **C.**    **Farmer Bros.' Statutory Claim for Attorneys' Fees Fails Due to the Lack of Coverage**

Farmer Bros. also seeks an award of attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code. (Dkt. 12 at ¶¶ 43-44.) Section 38.001(8) provides that a party

"may recover reasonable attorney's fees from an individual or organization . . . in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." Tex. Civ. Prac. & Rem. Code Ann. § 38.001. "To recover attorney's fees under Section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). "Because attorneys' fees are only recoverable 'in addition' to a valid claim, they must be auxiliary to an underlying substantive claim." *See OPF Enterprises, LLC v. Evanston Ins. Co.*, Docket No. 4:21-CV-01835, 2021 WL 4710948, at *3 (S.D. Tex. Oct. 7, 2021) (dismissing Chapter 38 claim for attorneys' fees following dismissal of underlying substantive claims). Farmer Bros. does not have a valid claim against Beazley "on a cause of action for which attorney's fees are recoverable." *Green Int'l, Inc*, 951 S.W.2d at 390. The Court should dismiss Farmer Bros.' statutory attorneys' fees claim.

## VI.  CONCLUSION

For the foregoing reasons, Beazley respectfully requests that the Court grant Beazley's Motion to Dismiss pursuant to Rule 12(b)(6) with prejudice. *See Selery Fulfillment, Inc. v. Colony Ins. Co.*, 525 F. Supp. 3d 771, 781–82 (E.D. Tex. 2021) (denying request for leave to amend complaint and dismissing claims with prejudice when policy's plain language precluded plaintiff from alleging its losses were within policy's coverage).

Dated: April 9, 2025

DEFENDANT BEAZLEY INSURANCE COMPANY, INC.

By  */s/ Michael J. Murtha*
Michael J. Murtha,
TX Bar No. 24116801
Jackson Walker LLP
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-6187
mmurtha@jw.com

Jonathan S. Zelig (admitted *pro hac vice*)
MA Bar No. 569432
Day Pitney LLP
One Federal Street, 29th Floor
Boston, MA 02110
(617) 345-4601
jzelig@daypitney.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will electronically send notification to all counsel of record.

 */s/ Michael J. Murtha*
Michael J. Murtha